UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA HERNANDEZ, et al., | Case No. 1:22-cv-01145-ADA-EPG |
| Plaintiffs, | ORDER DIRECTING CLERK TO ADD DEFENDANTS TO THE DOCKET |
| v. | FINDINGS AND RECOMMENDATIONS TO DENY COUNTY OF FRESNO'S MOTION TO DISMISS |
| COUNTY OF FRESNO, *et al.*, | (ECF No. 31) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Plaintiff Veronica Hernandez, individually, and as the guardian ad litem for Plaintiffs R.H. and M.H., brings this lawsuit alleging that Defendants failed to prevent and end abuse Plaintiffs suffered while in foster care. (ECF No. 25). Defendant County of Fresno (the County) moves to dismiss Plaintiffs' 42 U.S.C. § 1983 claims for failure to state a claim upon which relief may be granted. (ECF No. 31). The presiding District Judge has referred the motion for the preparation of findings and recommendations. (ECF No. 32).

For the reasons given below, the Court will recommend that the County's motion to dismiss be denied.

## I.    BACKGROUND

### A.  Summary of the Complaint

Plaintiffs filed this lawsuit on September 8, 2022. (ECF No. 1). The initial complaint named the County, Proteus Foster Family Agency (Proteus), and Doe Defendants. On February

17, 2023, Plaintiffs filed their first amended complaint, which added individual social workers: Social Worker Christina Lara, Social Worker Torres, Social Worker Lakeisha Atkins, Social Worker Supervisor Marshunda Harding, Social Worker Sergio Klassen, Social Worker Supervisor Annette Jones.[1] (ECF No. 25).

The first amended complaint alleges that, in 2008, Plaintiffs (who were all minors at the time) were placed in the custody of the County, which through an agreement with Defendant Proteus, led to Plaintiffs being placed in the foster home of Eli and Martha Mendoza in 2014. "Almost immediately, the Mendozas began engaging in neglectful and abusive conduct towards Plaintiffs," including failing to provide adequate food and clothing. (*Id.* at 6).

Plaintiffs lived with the Mendozas from approximately 2014 to 2016. During this time, Eli Mendoza sexually assaulted Plaintiffs. "In or around 2015, one of Plaintiffs' older siblings found R.H.'s journal, in which R.H. had described the sexual assaults she had been suffering." (*Id.* at 7). While the abuse was reported to the County, it failed to completely investigate or report it. For example, the County failed to conduct appropriate interviews of the children in the foster home or report the abuse to law enforcement. Based on their allegations, Plaintiffs bring five causes of action:

1. A deprivation of civil-rights claim under § 1983 "[b]y Plaintiffs R.H. and M.H. against Defendants SW Lara, SW Torres, SW Atkins, SWS Harding, SW Klassen, SWS Jones, and DOES 8-20";

2. A *Monell*[2] claim under § 1983 "[b]y Plaintiffs R.H. and M.H Against Defendant County";

3. A breach-of-mandatory duties claim under California Government Code § 815.6 "[b]y all Plaintiffs Against Defendants County, SW Lara, SW Torres, SW Atkins, SWS Harding, SW Klassen, SWS Jones, and DOES 8-20";

4. A negligence claim "[b]y all Plaintiffs Against all Defendants"; and

5. A negligent supervision claim "[b]y all Plaintiffs Against all Defendants."

---

[1] None of these Defendants have yet appeared, and it is not clear from the docket whether Plaintiffs have served any of them.
[2] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

2

1    (*Id.* at 10-19).

2          As for relief, Plaintiffs seek monetary damages, "[a]ny appropriate statutory

3    damages," costs, and attorney fees. (*Id.* at 22).

4                    **B.  Overview of Parties' Briefs**

5          The County filed its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

6    on March 21, 2023. (ECF No. 31). It argues that the first and second causes of action fail to

7    state a claim upon which relief may be granted because the first amended complaint "does not

8    allege whether the recently named individual defendant social workers are named in either their

9    official or individual capacities," and thus "Plaintiff[s] ha[ve] failed to provide requisite notice

10   of the basis of the claim[s] against them, and against the County." (ECF No. 31, p. 4). As to the

11   second cause of action, the *Monell* claim, the County also argues that Plaintiffs fail to state a

12   claim because they offer only conclusory allegations that the County had policies, customs, or

13   practices that led to the alleged civil rights violations. Moreover, the County alleges that

14   Plaintiffs' allegations regarding its failure to train employees are insufficient to show that it

15   acted with deliberate indifference. Lastly, the County argues that, if the Court agrees to dismiss

16   the § 1983 claims, it should decline supplemental jurisdiction over Plaintiffs' state law claims.

17         Plaintiffs filed an opposition on April 4, 2023. They concede that they failed to

18   explicitly state whether the individual Defendants are sued in their personal or official

19   capacities. (ECF No. 35). However, they argue this is not dispositive because none of the

20   individual Defendants have moved to dismiss a claim against them; their complaint otherwise

21   makes it clear that the individual Defendants are sued in their personal capacities; and caselaw

22   establishes a presumption in such situations that a defendant is being sued in his or her personal

23   capacity. As for the *Monell* claim, Plaintiffs argue that they have cited five prior instances of

24   similar failures by the County, which are sufficient to support their allegations that the County

25   had policies, customs, or practices that led to the civil rights violations. Moreover, they assert

26   that they have provided sufficient allegations to show that the County was deliberately

27   indifferent regarding its alleged failure to train its employees. Lastly, Plaintiffs argue that, even

28   if the Court were to dismiss some of the federal claims against the County, it should not decline

                                             3

1   supplemental jurisdiction over the remaining state law claims against the County because

2   federal claims would remain as to the individual Defendants, which form part of the same case

3   or controversy as the state claims against the County.

4        The County filed a reply on April 14, 2023, reiterating its arguments from the motion to

5   dismiss. (ECF No. 36).

6        With briefing being complete, the Court concludes that this matter would not benefit

7   from oral argument and is thus ripe. *See* Local Rule 230(g) (providing that a Court may address

8   a motion on the briefs without oral argument).

9   **II.    STANDARDS FOR MOTION TO DISMISS**

10       Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

11  pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

12  and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

13  (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a

14  pleading standard without regard to whether a claim will succeed on the merits. Indeed it may

15  appear on the face of the pleadings that a recovery is very remote and unlikely but that is not

16  the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and

17  quotation marks omitted).

18       "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250

19  F.3d 729, 732 (9th Cir. 2001). In considering a motion to dismiss, the Court must accept all

20  allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94

21  (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff,

22  taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the

23  complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

24  However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

25  motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

26       Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

27  conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To

28  survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[]

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

### III.     ANALYSIS OF CLAIMS

#### A.  Personal Versus Official Capacity

The County argues that "[a]ll of the § 1983 counts have [a] common defect[] that render[s] the Complaint legally insufficient," specifically, "[t]he Complaint does not allege whether the recently named individual defendant social workers are named in either their official or individual capacities." (ECF No. 31, p. 4). Noting that official capacity suits are treated as one against the entity, and that personal capacity suits seek to hold the individual government official liable, the County argues that, "[b]y failing to distinguish which claims and actions are alleged against them in official versus personal capacities, Plaintiff has failed to state a plausible claim upon which relief may be granted" by not "provid[ing] requisite notice of the basis of the claim against them, and against the County." (*Id*. at 5); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (noting difference between claims against individual in his or her official capacity (a suit treated as one against a governmental entity) and individual in his or her personal capacity (a suit seeking to impose personal liability)); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992), *as amended* (Oct. 9, 1992) ("The eleventh amendment bars [] a federal court action for damages (or other retroactive relief) brought by . . . a citizen against a state official acting in his official capacity" but does not "bar [such] claims against the state officials in their personal capacities.").

Plaintiffs concede that the first amended complaint does not specify whether the individual Defendants are sued in their personal or official capacities. (ECF No. 35). However, they argue that this is not fatal to their claims because none of the individual Defendants have moved to dismiss a claim against them; their complaint otherwise makes it clear that the individual Defendants are sued in their personal capacities; and caselaw establishes a presumption in such situations that a defendant is being sued in his or her personal capacity.

As an initial matter, each claim in the first amended complaint specifies which Plaintiffs

5

1   and Defendants are at issue. (*See* ECF No. 25, p. 10-11, noting that the first cause of action

2   under § 1983 claim, is "[b]y Plaintiffs R.H. and M.H. against Defendants SW Lara, SW Torres,

3   SW Atkins, SWS Harding, SW Klassen, SWS Jones, and DOES 8-20" and the second cause of

4   action under § 1983, the *Monell* claim, is "[b]y Plaintiffs R.H. and M.H. Against Defendant

5   County"). Thus, the first amended complaint indicates—and Plaintiffs confirm in their

6   opposition—that the first cause of action is against only the individual Defendants in their

7   personal capacities and the second cause of action is the only § 1983 claim asserted against the

8   County. (*See* ECF No. 35, p. 10, "The First Claim was clearly brought against the Individual

9   Defendants ***only*** (FAC, ¶¶ 32-38) and seeks damages against the Individual Defendants ***only***.").

10      But to the extent that Plaintiffs' silence in the first amended complaint leaves doubt as

11   to whether the first claim against the individual Defendants extends to their official capacities

12   (and thus the County), caselaw provides the answer.

> Where state officials are named in a complaint which seeks damages under 42
> U.S.C. § 1983, it is presumed that the officials are being sued in their individual
> capacities. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir.1990), *cert. denied*, 502
> U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991). Any other construction would
> be illogical where the complaint is silent as to capacity, since a claim for
> damages against state officials in their official capacities is plainly barred. *See
> id.*

   *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir.

   1994).

      Here, Plaintiffs seek damages under § 1983, and thus it is presumed that the individuals

   listed in the first cause of action are sued in their personal capacities.

      Having established that the first cause of action proceeds against only the individual

   Defendants, the Court notes that none of these Defendants have appeared, let alone moved to

   dismiss any claim against them. Moreover, the County cannot move to dismiss a cause of

   action directed solely to the individual Defendants. *See Woods v. Cnty. of Los Angeles*, No.

   2:20-CV-04474-AB (MAA), 2022 WL 980649, at *3-5 (C.D. Cal. Mar. 10, 2022), *report and

   recommendation adopted*, No. 2:20-CV-04474-AB (MAA), 2022 WL 971951 (C.D. Cal. Mar.

   30, 2022) (noting that, generally, a party can only assert its own legal rights and concluding

that the County of Los Angeles lacked standing to bring a motion on behalf of another defendant); *cf. Parlante v. Cazares*, No. 2:11-CV-2696 MCE GGH, 2012 WL 2571207, at *5 n.4 (E.D. Cal. July 2, 2012), *report and recommendation adopted*, 2012 WL 13042508 (E.D. Cal. Aug. 6, 2012) (noting that non-party lacked standing to participate in case).

For the reasons given, the Court recommends that the County's motion to dismiss Plaintiff's first or second causes of actions against the individual defendants—based on Plaintiffs' failure to specify whether their claims are asserted in a personal or official capacity—be denied.

### B. *Monell* Liability

#### 1. Introduction

The County next argues that Plaintiffs fail to state a *Monell* claim because Plaintiffs have not adequately established a pattern of misconduct nor provided sufficient factual support to show that the County acted with deliberate indifference regarding its alleged failure to train its employees. (ECF No. 31, p. 6).

#### 2. Standards for *Monell* claim

Before addressing the parties' arguments on these issues, the Court reviews the applicable standards for *Monell* claims and the relevant allegations in the complaint.

Section § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

In *Monell*, the Supreme Court concluded that § 1983's use of the word "person" extended to municipalities and other local governments. 436 U.S. at 690 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). However, a local government cannot be held liable for a constitutional

1   violation "*solely* because it employs a tortfeasor." *Id.* at 691.

2          Rather, a local government "may be held liable under § 1983 'when execution of a

3   government's policy or custom, whether made by its lawmakers or by those whose edicts or

4   acts may fairly be said to represent official policy, inflicts the injury.'" *Burke v. County of*

5   *Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (quoting *Monell*, 436 U.S. at 694). "Official

6   [government] policy includes the decisions of a government's lawmakers, the acts of its

7   policymaking officials, and practices so persistent and widespread as to practically have the

8   force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Gillette v. Delmore*, 979 F.2d

9   1342, 1346 (9th Cir. 1992) (noting that a *Monell* claim may be based on a formal governmental

10  policy or a longstanding practice or custom constituting the standard operating procedure of the

11  relevant local government).

12         To establish *Monell* liability, a plaintiff "must show that (1) she was deprived of a

13  constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate

14  indifference to her constitutional right; and (4) the policy was the moving force behind the

15  constitutional violation." *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d

16  1101, 1110-11 (9th Cir. 2001) (internal quotation marks and citation omitted).

17              **3.   Pertinent *Monell* allegations from the first amended complaint**

18         In support of their *Monell* claim, Plaintiffs' first amended complaint alleges that the

19  County "maintained the following unconstitutional policies, practices, or customs:"

20          1.  Assigning foster children to foster parents without adequate background
21              checks, failing to provide adequate supervision of foster children, and failing
               to investigate reports of potential neglect or abuse;
22
23          2.  Providing inadequate training regarding placement, background checks,
               supervision of foster children, or investigating reports of potential neglect or
24             abuse; and

25          3.  Inadequately supervising and disciplining employees whom the County
               knew had violated foster children's constitutional rights as set forth above.
26
    (ECF No. 25, p. 12).

27         And in support of "the existence of the County's unconstitutional customs, practices,

28  and policies," Plaintiffs offer the five following cases:

8

1. *L.O. v. County of Fresno*, Fresno Sup. Ct. Case No. 21CECG00289 – the plaintiff was allegedly placed in a foster home with a foster parent with a known history of criminal sexual misconduct, and defendants allegedly failed to conduct an adequate background check, to investigate potential abuse, to supervise the plaintiff, and to adequately train employees, which resulted in the abuse of the plaintiff from November 2000 to April 2001;

2. *Y.V. v. County of Fresno*, Fresno Sup. Ct. Case No. 22CECG02413 – the plaintiff was allegedly placed in foster care in 1999, and from 2000 to 2004 was abused by the foster mother's adult nephew who resided in the home; the plaintiff allegedly reported the abuse to her social worker, an agent or employee of the County a few months after the abuse began, in 2001, but there was no investigation, and the abuse continued;

3. *Briseno v. County of Fresno*, Fresno Sup. Ct. Case No. 06CECG00975 – the plaintiff minor child was allegedly placed in a foster home with a foster family that included a member that had a propensity for sexual misconduct, which resulted in two years of abuse of the plaintiff between 2003 and 2005;

4. *A.D. v. County of Fresno*, Fresno Sup. Ct. Case No. 21CECG00434 – the plaintiff was allegedly placed in foster care from 2006 to 2009 with foster parents after prior foster children reported sexual abuse at the hands of the foster father; in or about 2007, the plaintiff's biological mother allegedly reported physical signs of abuse on the plaintiff's body to the County's social services department, but they failed to report or investigate and otherwise failed to take measures to prevent further abuse; later, the plaintiff allegedly informed her biological grandmother of the abuse, which was reported to the County's social services department, but they again failed to report or investigate;

5. *A.A. v. County of Fresno*, Fresno Sup. Ct. Case No. 21CECG00432 – the plaintiff was allegedly placed from 2005 to 2016 with a foster parent who repeatedly sexually abused the plaintiff; multiple individuals allegedly reported suspected abuse to the County's social services department, but they failed to investigate and otherwise failed to take measures to prevent further abuse.

(ECF No. 25, pp. 13-14).

### 4. Parties' arguments

The County first argues that Plaintiffs fail to state a *Monell* claim because the first amended complaint "alleges the[] policies and practices in conclusory form." (ECF No. 31, p. 6). While the County recognizes Plaintiffs' citation to the five cases above in support of unconstitutional policies, practices, or customs, the County argues that four of the cases

"involved alleged acts or omissions that occurred in the years 1999-2007 and so could not be regarded as reflecting or showing a longstanding custom or practice in relevant years here (2014-2016)." (*Id.* at 9). Moreover, "[w]hile the fifth example is an alleged abuse in 2015-2016, one case of mishandling of an abuse claim, even if the allegations were later proven, is not sufficient to show that neglect is so 'widespread' and 'well-settled' that it had become the 'standard operating procedure' for the County in handling claims and in reacting to similar situations." (*Id.*) (citation omitted).

Plaintiffs acknowledge that "bare conclusory allegations of the existence of a pattern or practice" are insufficient to state a *Monell* claim. (ECF No. 35, p. 6). However, citing the five cases from their first amended complaint, they argue that they have sufficiently supported their allegations "by identifying multiple specific prior instances of the same or similar constitutional violations and injury." (*Id.*). Moreover, they argue that, contrary to the County's assertion, the four cases from 1999 to 2007 are highly relevant, "since determining whether Plaintiffs have sufficiently alleged a pre-existing custom or practice of the County of sufficient duration is the very point" and "the age of the cases cited to in the FAC only bolsters Plaintiffs' contention that the County has had a longstanding pattern and practice of unconstitutional behavior, based on the repetition of the same misconduct for over 17 years." (*Id.* at 7).

### a. Discussion

Because Plaintiff has not alleged that a formal policy—such as a written County policy—is the moving force behind the constitutional violations, the Court must consider whether there is some informal policy, custom, or practice that is "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Accordingly, the Court looks to whether the five cases cited provide sufficient factual support for the alleged unconstitutional policies, customs, or practices.

In resolving this issue, there is no concrete test applicable to all cases and courts look to various considerations. *Cf. Iqbal*, 556 U.S at 679 (noting that determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). However, the Ninth Circuit has described

the informal policies, customs, or practices necessary to sustain a *Monell* claim as being "longstanding, persistent and widespread," and "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). And in evaluating the past practices at issue here, the Court finds persuasive the following considerations that other courts have looked to: the number of pasts instances involved, their factual similarity to the current allegations, and their timing. *See Seever v. City of Modesto*, No. 1:21-CV-01373-JLT-EPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 5, 2022) ("To evaluate whether a sufficient pattern of unconstitutional conduct exists, courts typically consider the number of incidents, the factual similarity of those incidents, [and] their timing . . . ."); *Calhoon v. City of S. Lake Tahoe*, No. 2:19-CV-02165-KJM-JDP, 2020 WL 5982087, at *5 (E.D. Cal. Oct. 8, 2020) ("[C]ourts generally only are willing to infer an unconstitutional policy or custom when the plaintiff provides multiple incidents of prior, similar conduct, as opposed to the one previous incident plaintiff alleges here.").

### i.  Past Instances

As for the number of past instances, Plaintiffs cite five cases in support of their *Monell* claim. (ECF No. 35, p. 7). Among other things, Plaintiffs assert for each of the five cases that the County failed to investigate potential child abuse, one of the key allegations here. While the County disputes whether all five cases are relevant based on their timing, an issue the Court addresses below, the County offers no substantive argument that five prior cases would not be sufficient to establish a practice.

While there is no precise number, the Court concludes that the five cases here are sufficient to support a pattern so as to establish an unconstitutional policy, practice, or custom. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (concluding that five instances on same day regarding suppression of speech was sufficient to create genuine issue of material fact as to existence of unconstitutional policy); *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019) ("[T]he line between adequate and inadequate evidence of repeated constitutional violations does not involve a specific quantum or number of

1    allegations.").

2                              **ii.   Factual similarity**

3            Turning to the factual similarity of the five cases, the County argues that Plaintiffs do

4    not provide "any allegations of outcomes or final judgments against the County or a County

5    employee for such actions." (ECF No. 31, p. 8). While true, this is not dispositive, as courts

6    have considered prior instances of misconduct absent court findings as to whether they

7    occurred. *Seever*, 2022 WL 17418355, at *6 ("Courts of this district regularly allow plaintiffs

8    to rely on similar prior incidents that resulted in substantial settlements or in ongoing litigation

9    to evidence a practice or custom claim."); *J.M. by & Through Rodriguez*, No. 1:18-CV-01034-

10   LJO-SAB, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018) ("The fact that the alleged

11   incidents do not include findings by a competent court that deputies used unconstitutional

12   levels of force is not dispositive, contrary to Defendant's suggestion.").

13           Moving to the facts at issue, the County states that the "short blurbs given" "only

14   summarize[] the purported allegations in those cases." (ECF No. 31, pp. 8-9). True, the

15   descriptions of these cases are brief. However, Plaintiffs advise the County of the time frame of

16   the alleged misconduct (*e.g.*, 2005 to 2016), describe what occurred (*e.g.*, a minor was abused

17   by a family member that had a propensity for sexual misconduct), and identify relevant

18   unconstitutional policies, practices, and customs at issue (*e.g.*, the County's failure to

19   investigate potential abuse). The Court concludes that such facts are sufficient to give the

20   County "fair notice" to be able "to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of*

21   *Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

22   2011)). Moreover, the facts offered are sufficiently similar to those alleged here, *e.g.*, the

23   County failed to investigate reports of child abuse.

24                              **iii.   Timing**

25           Turning to the timing of the other cases, the County points out that four of the cases

26   *L.O.*, *Y.V.*, *Briseno*, and *A.D.*—involve allegations spanning 1999 to 2007, thus creating a gap

27   in time between the allegations beginning here in 2014. (ECF No. 31, pp. 8-9). While the

28   County acknowledges that the remaining case—*A.A.*—occurred during the relevant time

                                          12

period, it argues that "one case of mishandling of an abuse claim, even if the allegations were later proven, is not sufficient to show that neglect is so 'widespread' and 'well-settled' that it had become the 'standard operating procedure' for the County in handling claims and in reacting to similar situations." (*Id.* at 9) (citation omitted).

Plaintiffs argue that "[t]his is a fundamentally incorrect approach" because "determining whether Plaintiffs have sufficiently alleged a pre-existing custom or practice of the County of sufficient duration is the very point" and  "the age of the cases cited to in the FAC only bolsters Plaintiffs' contention that the County has had a longstanding pattern and practice of unconstitutional behavior, based on the repetition of the same misconduct for over 17 years." (ECF No. 35, p. 7).

The Court concludes that Plaintiff has the better argument.  Importantly, the Court does not find the gap from 2007 to 2014 among four of the cases to suggest the absence of a pattern. Rather, taking the cases collectively, they sufficiently allege, at this stage in the case, a series of alleged misconduct in the years leading up to the underlying incidents in this case, which is then punctuated by another event closer in time. Accordingly, this is not case where the alleged misconduct can fairly be characterized as isolated or sporadic incidents.

### iv.  Deliberate Indifference regarding Insufficient Training

Finally, the County argues that "[e]ven if it is established that a particular employee was inadequately trained (not present here), this does not establish the entity's deliberate indifference to constitutional rights, because the employee's shortcomings may have resulted from factors other than a faulty training program." (ECF No. 31, p. 10) (internal quotation marks and citation omitted). The Court disagrees and recommends finding that Plaintiffs' allegation of the County maintaining an unconstitutional policy, practice, or custom of "providing inadequate training regarding placement, background checks, supervision of foster children, or investigating reports of potential neglect or abuse" is sufficient to satisfy the requirement that "the policy[,] [practice, or custom] amounted to a deliberate indifference to her constitutional right." *Mabe*, 237 F.3d at 1111. In other words, to the extent Plaintiff has adequately alleged such a policy, practice, or custom as discussed above in conjunction with

Plaintiff's presentation of the five cases establishing a pattern of misconduct by the County, such also sufficiently alleges deliberate indifference by the County related to such a policy. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability").

### b. Conclusion

For the reasons given, the Court recommends that the County's motion to dismiss Plaintiffs' *Monell* claim be denied.

## IV. ORDER, CONCLUSION, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED that the Clerk of Court is directed to add the following Defendants to the docket: Social Worker Christina Lara, Social Worker Torres, Social Worker Lakeisha Atkins, Social Worker Supervisor Marshunda Harding, Social Worker Sergio Klassen, Social Worker Supervisor Annette Jones.

And for the reasons given above, IT IS RECOMMENDED that Defendant County of Fresno's motion to dismiss (ECF No. 31) be denied.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\
\\\
\\\

1      The parties are advised that failure to file objections within the specified time may

2  result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir.

3  2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5  IT IS SO ORDERED.

6      Dated:   __May 1, 2023__              ___/s/ Erica P. Grosjean___

7                            UNITED STATES MAGISTRATE JUDGE